Next case is North Star Alaska Housing v. United States, 2009, 50-54, Mr. Killian. Good morning, your honors, thank you. Today is apparently our day of bad acts and falsification, isn't it? We've decided to consolidate all such cases on today. Watch out for the Miami hurricane. May it please the court, we believe that with respect to errors of law, the CFC Court of Federal Claims made four errors. One, they found as a matter of law that for an eager request for fees based on bad faith to be granted, that the bad faith must occur in the litigation itself and that it has to be committed by the Department of Justice. Those were essentially the findings that they made. Similarly, the court failed to apply the law of five circuits that we provided. Five circuits which held that in the federal context, where there's bad faith during an administrative proceeding, which was clearly found here, and then litigation has to be filed that fees can be awarded. But wasn't the bad faith during the administrative proceeding the primary conduct that the lower court found justified the liability award? No, no. As a matter of fact, he never did that analysis in his fee decision. Tell me what the primary conduct was that he found. The primary conduct that he found were violations of the lease. If you walk through the decision and you say, okay, where are the violations? He found in our favor, based upon the interpretations of the lease, in 11 out of 13 of the cases that we had before him. The bad faith, so that's the primary conduct. The bad faith occurs in our disputes process, and this is critical to our procurement system, occurred after the cases had accrued, and they were then before the contracting officer for what was supposed to be a fair and impartial hearing. So the cases had already accrued, done. Now they're before the contracting officer for what we're supposed to get is a fair and impartial hearing, and that's the process that was abused. Didn't the court, though, say that the imposition of sanctions evolves from the exercise of the court's inherent authority to control proceedings in its court, and therefore activity occurring before litigation doesn't count? Well, as a matter of fact, Your Honor, it's interesting. What was missing in the lower decision is the fact that litigation was pending. Litigation was pending in this case since 1998, and the court made specific findings, and I'm glad to go over those with you, that the Army people abused the disputes process, abused the disputes process, and required that an illegal audit occur, and required that the depreciation be expanded despite the court's orders, were involved in the destruction and alteration of documents. Now, under the Sentex case, under the Sentex case, if that occurs, it doesn't have to be by the Department of Justice. The issue here is really whether we extend Sentex into pre-litigation activity. But it isn't just pre-litigation, and perhaps I should go and read some of the findings that he made in his lower decision. They absolutely affected the litigation itself. And it was interesting because the judge says he was very troubled by all of this, but then he justified it by saying that the Department of Justice guy didn't do it, and that's not what Sentex requires, as you know. With respect to the audits and with respect to the criminal investigations, this is his specific finding on A-109. The first thing he talks about the Iraqo audit, Thus, in November 2001, Mr. Peterson recommended that DPW request that Northstar be audited for fraud by Iraqo. This recommendation appeared to be based in large part on the fact that Northstar had replaced the tumblers in several lock sets with used tumblers, while charging defendants for new ones. Yet, this issue was raised with Northstar readily reimbursed the Army for $135. Yet, even after the Iraqo audit yielded little in government accounting, Mr. Peterson and others pressed for and eventually obtained a criminal investigation of this matter. That investigation delayed resolution of this case by more than a year, during which period Mr. Peterson, Ms. Kaiser, and others continued to abuse Northstar on almost a daily basis. And then it goes on to say, It finds in Mr. Peterson's and Ms. Kaiser's involvement therein represented yet another example of their desire to use the wheels of government to grind down Northstar for its failure, etc. And then in the footnote, they talk about the audit and the use of the audit for illegal purposes beyond citing the Sells case. So, what we have here, and this is one example, a major example is in the depreciation, where he found bad faith in the depreciation, and he found in the disputes process that the contracting officer was directed to change his decision, which would have favored us on depreciation. And then the record continues to show what the Army did during the litigation was continue the depreciation. So, you have a contracting officer's final decision who said they continued it all the way through 2007, which the court found they shouldn't have done, and therefore they paid us. So, then the other thing I mentioned was the destruction of records. Did the court find that to be in bad faith? Yes. The depreciation, the continued depreciation? Absolutely in bad faith, absolutely. And the only thing that he says really is that the DOJ lawyer didn't do it. But I would also say that I would refer you in that regard to an undisputed document, which was in the initial decision, which is found on AO66, which says that the depreciation and the extension of the depreciation beyond just carpet to everything else was done by Don Kinner. And that's on AO66, and it says, The issue of depreciation is not up for discussion. Our direction came specifically from Don Kinner, DOJ, at a teleconference with the COE, Housing, and DOJ, in which he stated depreciation will apply to everything. Where the question was asked specifically, does depreciation apply only to carpet or all repair items, Don Kinner stated it said it applied to everything. And the judge found on 95 that this application of depreciation by the Army, by the Army, was in bad faith. And this was under litigation. So under Sentex, it's a very easy, to me, I mean, very easy to say, as Sentex said, that, hey, if the DOJ does it, they can pay. If the agency does it, they have to pay. Because they were trying to use that argument against Sentex, as Judge Lynn knows. And that was the finding in Sentex. The other thing that, in our procurement process, as I, as I. . . So what exactly is the primary conduct, as you would characterize it? Sorry? What exactly is the primary conduct, as you would characterize it? Breaches of the lease. But there's no question that Judge Allegra included in the primary conduct the administrative claims process. I don't believe that's, I don't believe that's the case. He, he, no, that wasn't part of the, there was no, no award. There was no money based upon that. It offended him, no end. It offended him, no end. But there was no money or no claim for money based upon that. That wasn't primary conduct. Well, you don't think that he treated that as part of the primary conduct that gave rise to the failure of the government to behave in good faith and fair dealing? I think it was probably an aspect that he considered, but it wasn't the primary conduct that we're talking about here. He had done, if you look in the initial parts of the decision. I'm looking on page 109 of his decision where he discusses it in detail and talks about how bad faith infected virtually every aspect of the administration's release, including most remarkably the dispute resolution process. Yeah. But what, the primary conduct, that doesn't mean that was our claim for compensation. That's, that's not it. He found that as a result. Why isn't that part of the administration of the lease? The dispute resolution process, you would not characterize as part of the administration of the lease? Absolutely not, Your Honor. This is by statute, by statute under the Contract Disputes Act. Under the Contract Disputes Act and FAR, that is a wholly separate situation. What happens is you have a claim, you try to work it out. You can't work the claim out. You then certify a claim, certify it, which subjects a contractor to possible claims for fraud, you know, which we all know once there's a certification. And then it imposes upon the contracting officer the duty to look at the situation and act fairly and impartially. In your complaint, did you bring a claim for good faith and fair dealing related to the administration of the lease in the Contract Disputes Act? Yes. No, with respect to the administration of the lease, we did. And you didn't bring a claim related to the dispute, contract dispute resolution process that took place? You didn't suggest in your complaint that the government was not in good faith and fair dealing during that process? I don't recall whether we did or not, but it wasn't part of the primary conduct of what we were complaining about, which was violations of the lease. This is something which is a statutory responsibility. We're entitled to that statutorily. You're entitled to it statutorily, but you can seek remuneration for the government acting not in good faith and fair dealing during that process. But there was no remuneration for it. This was the claims that were made for which we received compensation, both as a result of the decision and as a result of the final decisions. And the independent boards, as they did after the judge's decision, were based upon breaches of the lease. That's the primary conduct. You were just arriving at the time you wanted to save. You can save it or use it. Or a mixture thereof. A mixture thereof. I just wanted to make one other point to think about. It's really following up on what you're saying. We argued in our briefs, and I think it's absolutely correct, that once you get to the point in the administrative process where you're requesting a final decision, that is the condition precedent, then to me that is part of the litigation process. Nation Sabinic has stated that in their volumes, and I think it's absolutely true. Because penalties apply, interest applies, and the contracting officer is required to do a good faith analysis of what it is. Thank you. Mr. McElmill for the government. Thank you, Your Honor. Good morning. May it please the Court. The corruption of the disputes process was part of their primary claim in their 1998 complaint. There's a claim in there for unspecified damages, and this goes to what the contracting officer was doing, that he wasn't being independent. They talk about changes of decisions in there. They allude to that. They don't specify them. Then in their 2002 claim, they claim that the Army was such a bad tenant that compared to a somewhat comparable project at an Air Force base, we owed them money because we had diminished the value of those properties. That included this claim that even the Contract Disputes Act process had been compromised. And that was part of what Judge Allegra understood and what Judge Allegra said here. His reference to Mr. Hopson on page 109 is a reference, and Mr. Everett, is a reference to the contracting officer and the contracting officer's representative who Judge Allegra found contributed to the harm by allowing themselves to be co-opted and by failing to address the bad faith exhibited by other officials. So this was part of their theory of their case that we breached the lease and therefore owed them. If not those damages specified, not specified in the 1998 complaint, then $8.6 million in the alleged diminution of the value of those 400 units. What about the investigation on the lock set and the subsequent criminal investigation? Yes, well, Mr. Killian described that as an illegal audit. That's not what Judge Allegra found. What happened was Northstar admitted that it overcharged for four lock sets amounting to $135. That prompted a further Army interest in what else was going on. That audit was commenced at the Army level. The Army auditor came to his conclusion saying that not much else was going on, but then others got involved. And I'm not specifying who those others are because they are the subject of in-camera submissions that were submitted to Judge Allegra and apparently persuaded Judge Allegra that the stay that was imposed was warranted and should last for as long as it lasted. There were four occasions when Northstar asked for that stay to be lifted. And based upon the regular in-camera submissions, what I mean is there were more than one. Judge Allegra kept the stay going. Three of those times, Judge Allegra did not even ask the government for a response to Northstar's request to lift the stay. Now, Judge Allegra did not find any bad faith in connection with the investigation or the criminal investigation, correct? Well, he did find concern that the Iraq auditor's statement reflected, at least on the part of the Army, another way to get Northstar. But there's no evidence that that was done. And Judge Allegra refers to other government officials in his decision on this point. And he is alluding there to who else was involved that he is aware of through those in-camera submissions that Northstar has never tried to challenge on this point. What Judge Allegra calls this banner claim of the corruption of the Disputes Act process brings up what happened in the Supreme Court Alieska Pipeline case, which Northstar cites in its brief. There the court said that this bad faith exception or a court's inherent power to sanction was not available to vindicate even an important public purpose in a statute. And that's what this sounds like. It sounds like Northstar wants the court to vindicate the purposes of the contract Disputes Act with respect to the claims process. That is not vindicating judicial authority. That is vindicating something else. And the Supreme Court has signaled that that is not the sort of thing that the bad faith exception will reach. Rather, and this court has said this twice, both in Amstead that we cite and Northstar does not discuss, and last year in Samsung Electronics, which Judge Allegra cited, that it's abuse of the judicial process that is the issue. And Judge Allegra did not find that the judicial authority of the Court of Federal Claims required vindication in this case for the reasons he describes. And Northstar does not show, by clear and convincing evidence or any standard like that, that Judge Allegra was wrong and that the judicial authority didn't require vindication. Are you suggesting that bad behavior on the part of the government, giving rise to bad faith, that occurs during the contract dispute resolution process, can never give rise to centric, centex-type attorney fee awards? No. Is that the position? No. And there was an instance in this case where that sort of thing might have happened. I'm not saying that it was anywhere close to happening. But Judge Allegra ordered a remand on the issue of incentive fees. So ordering the Army to go over these incentive fees decisions it had made that Judge Allegra found had been made through a bad faith process. And he said, in effect, do it again and make sure you don't do it the same way you did it the last time. And we instructed the Army that those were the requirements. Had the Army not done what Judge Allegra had ordered it to do, then yes, even the Army's actions in response to a court order could have been the subject of a bad faith fee decision. So you're not asking for a broad and sweeping rule that would be anything outside the context of litigation, purely litigation happening in front of the CFC or this court can give rise to bad faith for attorney fees? You're acknowledging what we left open in centex, which is that there is the possibility that bad action that occurs prior to litigation could give rise to attorney fees. I think we might be saying the same thing, but I want to be careful. It has to be part of the litigation. Now, that doesn't mean it has to be somebody on the stand, but it does have to be something that is somehow connected to the litigation. So, for example, when Judge Allegra ordered something be done, and this sort of thing happened in maritime management and Brown v. Sullivan, which there's a lot of discussion about in the briefs, if the agency doesn't do what it's supposed to do in the context of the litigation itself, then, yes, it doesn't have to be in the courtroom direct between the court and the judge. But you're saying it has to occur after the judicial process has been invoked? No. Okay, so I'm trying to understand. So that's the other part of what centex alluded to. If we had raised any bad faith defenses to claims that had been denied by the contracting officer or deemed denied, then even though the ambiguity comes from how the centex court says use of the word solely, and it says not only solely primary conduct, but then it also says that primary conduct cannot be the basis, and then it alludes to that American hospital. Well, it can't stand alone be the basis. See, this is a little thing I thought that might not be exactly right in Judge Allegra's opinion, because I read his opinion and got the impression at the end that he was thinking primary conduct could never be included in an analysis to ascertain whether there is such an attorney fee award justified. Well, this court did make a statement that sounds very much like that. In centex on page 1375, the conduct of government agencies and agents before that time, talking about the accrual of the claim, cannot form the basis for an award. But my point is that let's say- Hold on, though. Centex clearly leaves open, explicitly leaves open, the possibility for an award being justified, I mean I can quote it to you, after the claim accrues but before the judicial process is formally invoked. Yes, in that footnote. That's right. So we've explicitly left something open. So language elsewhere in the opinion that might seem to close that door when the court actually makes it crystal clear by very explicit language that it's leaving it open. I left that open. But in that footnote, the court went further and described how it understood that theory, by if a defendant forces the plaintiff to go to court to obtain relief to which the plaintiff is clearly entitled. And this is a reference back to American Hospital, which uses the term unnecessary litigation. Judge Allegra does get to that point, and he says that they don't show, nor start, that anything in this litigation was unnecessary. He describes, for example, their failure to prove that $8.6 million banner claim as he characterized it. And more importantly, here, nor start, never identifies any frivolous defense we raise to any claim. The most focus they put is on the depreciation claim, but as we explain in our brief, the timeline of that, when the extension decision was made, this court had not yet reversed West Carthage, which was a court of federal claims decision, almost exactly involved the same lease provision as we were dealing with here. The denial of our summary judgment motion in 2002, which they claim was the order we violated, was, of course, not an order to do anything. It was a decision by Judge Allegra that our reliance on West Carthage was not all that we thought it was. So even with respect to depreciation, we did not raise any frivolous or bad faith defenses. And so they were not clearly entitled to that depreciation relief, at least until this court reversed West Carthage in 2003. On our next opportunity to weigh in on that matter in 2004, and this is in the appendix, we abandoned that position on liability. They never presented to the contracting officer up until that time a request for money, so we still had a jurisdictional defense to that depreciation claim. And the point here is that even, and Judge Allegra considered this, even under that more expansive view of the exception, they would not meet it. So even under what this court leaves open in that footnote, they don't meet that test. So I'm just trying to understand. Is your argument that the claim in this case did not accrue until after the contract dispute resolution process had taken place? It depends on what claim we're talking about because there were 31 claims, and the appendix lays this out starting at page 121. Then there were three cases. They were consolidated for convenience, so it's difficult to know what claim we're talking about. Well, what claim did they get remuneration for? Well, that's a little complicated, too, because the judgment on page 138 only provides for $241,000 in relief. Those were mostly incentive fees. It was some liquidated damages returned, and there was a claim about a fire. Thereafter, on the strength of what Judge Allegra said on the lease provision issues, they submitted money claims that they hadn't submitted but had raised in a declarative, well, they had not submitted money claims to the contracting officer on 24 of the 31 claims. So they went back, and even though they asked Judge Allegra for money, they went back to the contracting officer for rulings on money damages. The contracting officer followed the guidance of Judge Allegra's opinion, but before the entry of final judgment, awarded those claims. The payment was made after final judgment, but if we're talking about the money that Judge Allegra found them entitled to, it's $241,000. Could there ever be a damage award linked to government behaving badly during the contract dispute resolution process? I can't think of one off the top of my head, Your Honor. Because I'm trying to figure out how that could be part of the claim. Well, normally it wouldn't be. What Mr. Killian described is the normal case that a contractor goes and says, they violated this, they breached this part of the lease, this is our damages caused by that, and no one would talk about it because Wilner makes that most usual. Well, no one even talks about what the contracting officer did. Here they were saying that the whole structure at the Army, its entire way of dealing with them on this lease, was different from the way the government dealt with them at that Air Force base. And therefore, it's not the same plaintiff, it's a related plaintiff party, but therefore, because we were such a bad tenant in all these respects, we owe them $8.6 million because the value of their house is diminished on the local market. So even the Contract Disputes Act matters. We're woven into that. And we spent a good deal of time at trial talking about whether Mr. Hobson had been coerced, whether Mr. Klein, the previous contracting officer, had done his job, whether Mr. Everett had done his job. So they made it part of that claim. Judge Allegra analyzed it that way. And therefore, it is part of the primary conduct. Now, the rule should be, though, and this is supported by Amstead and Samsung Electronics and Chambers itself, that there has to be some fraud or abuse of the judicial process itself because that's what the court has power to do through its inherent part of sanction. And after all, this is a sanction. It's to punish a recalcitrant litigant for what he does during litigation, not for things that he may have done outside the litigation context that were administrative in nature. And by the way, to respond to something they say, that in no government case has awards not been found, LAM engineering, a case they cite, was a government case. It was a state government case. But that was bad faith contract administration found not to support a fee award. For those reasons, we ask that the court affirm. Thank you. Michael Mayne. Mr. Killian has two minutes or so. Thank you, Your Honor. LAM engineering, as he says, is a state court case. It had nothing to do with really administration. It had to do with determination. There wasn't an administrative process like what we have here, as I'm sure you're aware. Allegra missed, just as a starting point, Allegra's entire premise. You mean Judge Allegra? Judge Allegra. I apologize. Judge Allegra's entire premise, we spent some time together, was based upon the statement that he made that the Federal Circuit refused to follow American Hospital and clearly aligned itself with those circuits. Now, Judge Moore, to your point, that's just not true. They left an opening in syntax that if there was bad faith conduct that required litigation to occur during the administrative process, that fees could be awarded. That is the reading of syntax. That's not the way. That's what footnote one says. And it goes on to say it, I think even somewhere else. It's exactly what it says. So for Judge Allegra to base his entire decision on syntax saying what it didn't say is wrong. With respect. Well, counsel, in the opinion, do we actually say that it's possible for conduct after a claim occurs before the judicial process to give rise, or do we say we're not reaching this issue? You weren't reaching the issue. Right. So Judge Allegra just reached the issue that we weren't reaching. So it wasn't sort of him failing to follow our precedent. It was him saying, okay, well, I need to reach it in this case, and this is how I decide it. Well, I think, though, there was a misstatement from Judge Allegra, though, on what the standard was because he said specifically that you refused to follow American Hospital. That was an exact quote from his decision, and I don't think that's what I was taking exception to. With respect to the connection to litigation, and I gave you four or five areas, there are specific findings with respect to depreciation, with respect to the investigation, with respect to the Iraqo audit, and with respect to the destruction, that these were all done in bad faith. And the only distinction he makes in his decision is that they weren't done by the Department of Justice. That's his only distinction. Yet they were part of the litigation. They were critical parts of the litigation. And so, therefore, there was an abuse directly of the litigation process. Well, under our inherent power to sanction, we can really only sanction for abuses of the judicial process. And this was something that clearly occurred in the administrative process. A whole different branch of government. I'm very sensitive to the notion that I'm not allowed to do stuff they're doing. No, I don't think that's, if I could take exception, because if you look at the legislative history to the Equal Access to Justice Act extension and amendment, and the five circuit cases that we served to you, and there are no circuit cases that say that there's been an abuse of the administrative process that requires litigation, which is exactly what occurred here. In every one of those cases, they award legal fees. There's not one case where they found an abuse of the administrative process. In all of those cases, there was also something that amounted to bad faith during the litigation. It may not have been the sum sole and substance of what the court cited, but in those cases, the primary conduct or the non-judicial conduct was in tandem with continued bad behavior during the judicial process. In American Hospital, I would agree with you. In the others, it was more the administrative process did not do their job. More. I agree it was more. In fact, honestly, if you could show me or if Judge Allegra had found abuse during the judicial process, I think absolutely what occurred during the CDA can be taken together with it. I think Centex says that outright and stands for that proposition. The problem is Judge Allegra found no individual act during the judicial process that did amount to bad faith. But he did. That's what I'm saying. Well, no. He was quite explicit. He didn't. No, no. If you read the underlying decision, that's why he spends so much time trying to differentiate or say Don Kenner didn't do it. That's his whole defense is that Don Kenner didn't do it. If you read the underlying decision, however, in the areas that I'm talking about, he makes specific findings that the Army did it. And under Centex, it doesn't make a difference. It's during the litigation, it's the abuse of the process, and it's an abuse of the litigation. The two were hand-in-hand. But Judge Allegra's opinion wasn't limited only to conduct by Donald Kenner. It seems he goes beyond that. He does discuss about Donald Kenner, and he concludes that there was no bad faith conduct. By Mr. Kenner. By Mr. Kenner. But what he doesn't agree, but then… But then he goes further, doesn't he, no? He goes further, and he says the record contains no statements by Mr. Kenner, but if you look on A004 as an example, he finds, he quotes part of the ruling where he finds in the underlying ruling that the Army committed bad faith during the litigation process on this very issue which was a key issue in the case, depreciation. That's A004. But if you go back and look at the underlying, that was found to be bad faith on the part of the Army. And the same thing's true with the audit, and the same thing's true with the criminal investigation. He makes a specific finding, which he never addresses in his fee decision, specific finding that the Army caused that to happen in bad faith. Any further questions? Thank you, Mr. Killian. We'll take case number five.